## WILLIAM BROWN *vs.* BETSEY KELSEY & others.

Where a testatrix, by certain clauses in her will, bequeathed to L. B. the use of seven hundred dollars during the natural life of the legatee; and to the E. C. Church in L. the use of five hundred dollars, the annual interest of which was to be appropriated for the support of evangelical preaching; with a bequest over of the seven hundred dollars, after the decease of L. B., and of the five hundred dollars, upon the non-performance by the E. C. C. of certain specified conditions; and, by a subsequent clause, the testatrix directed her executor to see that the bequests above mentioned were safely invested; it was held, that it was the duty of the executor to invest such sums for the benefit of the legatees, respectively; that the expenses which might be incurred by the executor in investing and managing the same were a charge upon the general estate of the testatrix; that, when so invested, the legatees would be entitled to the whole income of the funds, respectively, whether more or less than the legal interest; and that if so invested by the executor, without fault on his part, any loss of the funds which might occur would fall upon the legatees or other parties interested therein.

If the income of a sum of money be given by will to one for life, and there is a gift over of the same after the decease of the legatee, which is void for uncertainty, the absolute property in such bequest does not vest in the legatee, but becomes liable to distribution among the heirs at law, as intestate property.

A bequest for the promotion of religious and charitable uses and enterprises is valid, even though there be no trustee appointed to carry the same into effect; and, in such a case, the heir at law or the executor, as the case may be, becomes the trustee, or one will be appointed by a court of equity.

A testatrix having bequeathed what should remain of her estate, after payment of certain specified legacies, " for the promotion of such religious and charitable enterprises as shall be designated by a majority of the pastors composing the Mid-

dlesex Union Association;" this is a sufficiently certain designation of the charities to which the property bequeathed is to be applied; and an appointment being made accordingly by the members of such association, the appointees will be entitled to hold the bequest and to dispose of it, in the same manner and for such purposes, as if it had been made to them directly.

A testatrix, after providing in her will for the payment of debts and funeral charges, bequeathed sundry pecuniary and specific legacies, and, if there should be any estate remaining after payment thereof, the residue for the promotion of certain charitable and religious enterprises, and appointed an executor to settle her estate as soon as practicable after her decease, and to see that the bequests were safely invested, and that her directions in relation to the same were strictly complied with; the testatrix having left both real and personal estate, and there being a surplus of the latter, after payment of the debts, funeral charges, and legacies; it was held, that the executor had no interest in or power over the real estate

THIS was a bill of interpleader brought by the plaintiff, as the executor of the last will and testament of Jenny Little, who died on the 2d of July, 1845, against the defendants, who were her heirs at law, and the devisees, legatees, and appointees under her will.

The will, which was executed on the 30th of May, 1845, contained the following provisions : —

" *First.* After paying all just debts and funeral charges, and erecting suitable stones at my grave, I give and bequeath to Lois Bartlett, 2d, the use of the house in which I now reside, for the space of one year from my decease, if it shall at my decease be in my possession ; if not, I hereby direct and authorize my executor hereinafter named to procure a comfortable tenement, for the above specified time, for the use of the said Lois ; and in either case, I hereby direct my executor to furnish her with a cow, with suitable feed and fodder ; also to furnish her with firewood prepared for use, with all necessary provisions, together with soap and candles sufficient for her use for the space of one year.

" *Second.* I give and bequeath to the above named Lois the use of seven hundred dollars during her natural life.

" *Third.* I give and bequeath to the Rev. Hope Brown, the late pastor of the church of which I am now a member, the sum of nine hundred dollars.

" *Fourth.* I give and bequeath to my cousin, Betsey Kelsey, one hundred dollars.

" *Fifth.* I give and bequeath my household furniture and wearing apparel, in equal shares, to Betsey Kelsey and Lois Bartlett above named.

" *Sixth.* I give and bequeath to the Evangelical Congregational Church in Lunenburg, of which the Rev. Eli W. Harrington is now pastor, the use of five hundred dollars, the annual interest of which is to be appropriated for the support of evangelical preaching, by such ministers as shall be approved by a majority of the members of the Middlesex Union Association.

" *Seventh.* If, after paying the above specified legacies, there shall be any portion of my estate remaining, I give and bequeath the same for the promotion of such religious and charitable enterprises, as shall be designated by a majority of the pastors composing the Middlesex Union Association. I also give the seven hundred dollars, appropriated to the use of Lois Bartlett above named, during her natural life, at her decease, to be appropriated in the same manner; and I further direct, that if the church in Lunenburg above named shall appropriate the amount left to it contrary to the directions above specified, or if it shall neglect to sustain the preaching of the gospel for the space of twelve successive months, then the amount appropriated to the use of the said church shall be appropriated to the use of other religious and charitable enterprises as before specified.

" *Eighth.* I hereby appoint Maj. William Brown, of Lunenburg, the executor of this my last will and testament, requesting him to settle my estate as soon as practicable after my decease, and to see that the bequests specified under the second, sixth, and ninth specifications in this instrument are safely vested, and that my directions in relation to the same be strictly complied with."

In pursuance of the authority conferred by the will on the pastors composing the Middlesex Union Association, that body held a meeting at the late residence of the testatrix, on the 7th of April, 1846, and made the following appointments, by an instrument in writing, signed by a majority of the pastors composing the association, namely : —

21*

" To the Orthodox Congregational Society in Shirley, the homestead of the testatrix, the same being the dwelling-house which she last occupied, with the out buildings, and about nine acres of land under and about the same, situated near the middle of Shirley; meaning that the annual income thereof shall be appropriated for the support of orthodox evangelical preaching, by such ministers as shall be approved by a majority of the pastors of the Middlesex Union Association; provided, that if the society shall appropriate the income contrary to this direction, or shall neglect to sustain the preaching of the gospel for twelve successive months, then the whole of the homestead shall be given to those societies, and in those proportions, hereinafter named and specified, in reference to the residue of the estate of the testatrix, that is to be appropriated to religious and charitable enterprises, according to the judgment of the undersigned.

"Of the remainder of the estate, both real and personal, together with the legacies as they shall become applicable, to the American Board of Commissioners for Foreign Missions, two fifths; to the Massachusetts Home Missionary Society, two fifths; and to the American Education Society, one fifth."

The bill set forth the execution of the will, the death of the testatrix, the probate, the appointment of the executor, and his acceptance of the trust; that there was a surplus of personal property after paying all charges, debts, and legacies; that in the eighth clause of the will, the word "ninth" was used by mistake for the word "seventh;" that the heirs at law of the testatrix were her cousins, who were made parties defendant; and that the testatrix died seized of three parcels of real estate, namely, the homestead, three undivided thirteenth parts of another parcel of land in Shirley, and a tract of land in Lunenburg.

The bill then alleged, that the Middlesex Union Association had made the appointments above specified, under the power given by the will, in conformity with the direction, and in pursuance of the authority contained in the will; that the

devisees and legatees, and the corporations, to whom the residue was appointed, had been made parties defendant; that doubts had arisen as to the construction of the will, and adverse claims had been set up by the heirs at law and devisees and appointees; and that the plaintiff could not execute the trusts of the will without the direction of the court.

The plaintiff therefore prayed that the defendants might interplead, and set forth the following points in reference to which doubts had arisen: —

1. Whether the sum of seven hundred dollars was to be invested and held by the executor, the principal being at the risk of Lois Bartlett, or whether the executor should pay her forty-two dollars a year out of the estate.

2. Whether the principal of the bequest to the Evangelical Congregational Church in Lunenburg should be paid to the deacons thereof, or the amount invested by the executor, and the income only paid to the deacons.

3. Whether the real estate of the testatrix was disposed of by the will; whether the homestead vested specifically under the will and appointment in the Orthodox Congregational Society in Shirley, or whether the executor might sell the real estate; whether, on a sale thereof, he should pay over any part of the principal proceeds thereof to such society, or only the income arising therefrom; and whether the appointment vested any estate in the corporations to whom the residue was appointed.

4. Whether the expense of managing the funds bequeathed in the second and sixth clauses of the will was to be paid out of the residue of the estate.

The bill then prayed, that the executor might have leave to sell the real estate and dispose of the proceeds under the direction of the court.

Several of the heirs at law, and the legatees and appointees, appeared and answered; admitting the facts alleged in the bill, and asking the judgment of the court on the questions thereby raised. As to the other parties, the bill was to be taken as confessed.

The **cause** was submitted on written arguments, by *E. R. Hoar,* for the executor, and for the residuary legatees, and the devisees under the appointment; by *B. Russell,* for the Orthodox Congregational Society in Shirley, the deacons of the Evangelical Congregational Church in Lunenburg, and Lois Bartlett; and by *N. Wood,* for Thomas Hazen and others, heirs at law of the testatrix.

WILDE, J. This is a bill of interpleader, brought by the executor of the last will of Jenny Little against her heirs, devisees and legatees, praying for the direction of the court in what manner he is to proceed in the execution of his trust.

By the second clause in the will there is given to Lois Bartlett the use of $700 during her natural life; and the first question to be decided is, whether she s entitled, under this provision, to the yearly legal interest of that sum, as she claims, or whether it is the duty of the executor to invest the same for her benefit, and to apply the annual income thereof in satisfaction of the legacy. And we are of opinion that the latter construction is manifestly conformable to the intention of the testatrix. By the last clause in the will the executor is requested to see that this sum, and other bequests, should be safely invested; and when invested, it is clear, by the express language of the will, that the legatee is entitled to the use or income thereof, whether it should be more or less than the legal interest of the sum invested. Money may at times be safely invested so as to yield more than legal interest; and in such case it would be quite clear that the legatee would be entitled to the whole income; and on the other hand, if the executor could not safely invest the $700 so as to yield an income of six per cent, the legatee could claim no more than the actual income. So if the sum invested should be lost, in whole or in part, the loss must fall on the parties interested in the fund, if it were invested by the executor without fault on his part.

It was argued for this legatee, that the gift over of the fund after her decease was void for uncertainty, and consequently that an absolute property vested in her. But such a conse-

quence would not follow if the gift over were void, but the fund would be liable to distribution among the heirs as intestate property ; but we hold that the limitation over is not void, for reasons hereafter to be stated. Nor is there any ground for the argument that the executor is bound to pay over the $700 to the legatee. If the use of a chattel had been bequeathed to her, this argument might be well founded, notwithstanding the limitation over, if such were the intention of the testatrix. But it is expressly made the duty of· the executor to invest the $700, and to pay over the income to the legatee.

Another question was discussed as to this bequest, namely, whether the legatee of the income were entitled to the whole income of the sum invested, or only to the net income, after deducting the expenses of the executor in investing and managing the fund, and paying over the income. On this point, the court are of opinion, that the legatee of the income is entitled to the whole income, and that the executor's expenses are a general charge upon the whole estate. And so a similar question was decided in the case of *Sawyer* v. *Baldwin*, 20 Pick. 378, and the decision is fully supported by the cases there cited.

Another question, as to the construction of the bequest to the Evangelical Congregation Church in Lunenburg, depends, we think, on the same principles. The use only of $500 is bequeathed, and this sum the executor is directed to invest ; and by a subsequent clause in the will it is provided, that if the church should appropriate the amount left to it, contrary to the directions in the will, or if it should neglect to sustain the preaching of the gospel for the space of twelve successive months, the amount appropriated to the use of the church should be appropriated to the use of other religious and charitable enterprises. The direction to the executor safely to invest this sum, was doubtless to secure it for all the purposes to which it was designated by the will. We consider this direction conclusive as to the intention of the testatrix as to this as well as to the other bequest. The only

remaining question, as to the disposition of the personal estate, is, whether the gift and bequest in the residuary clause for the promotion of religious and charitable uses and enterprises is a valid bequest; and we have no doubt that it is.

We consider it quite unnecessary to remark upon the numerous authorities cited by counsel on this point, as they frequently have been under the consideration of this court; and it is now considered as the settled doctrine under the statute of Elizabeth, in regard to charitable uses, which has been adopted in principle, and in substance, in this commonwealth, that an appropriation or dedication of property for such uses will be upheld, although there be no specific grantee or trustee. In such cases arising under wills, the executor or heir, as the case may be, becomes the trustee of those for whose use the donation or appropriation is intended, and may be compelled by a court of equity to execute the trust. So it was held in the case of *Bartlett* v. *Nye*, 4 Met. 378, 380, after a full consideration of the previous authorities which fully support the decision. So in the case of *Washburn* v. *Sewall*, 9 Met. 280, 282, the same doctrine is laid down. In cases of charitable gifts, the chief justice says, " It is no objection to their validity, that no person is named capable of taking the legal interest; if the object can be ascertained, the want of a trustee will be supplied by a court of equity." There is, however, in this case, no necessity for such a supply. The executor, in the first place, held the property in trust, and is now bound to transfer it to the appointees designated by a majority of the pastors composing the Middlesex Union Association, to be disposed of for religious and charitable enterprises as directed in the will.

It has been argued for the heirs at law, that it does not appear with sufficient certainty to what particular charity or charities the property bequeathed was to be applied; and that no donees or trustees were by her selected to make the application. But if the appointment by the association of pastors was made in pursuance of the direction in the will, as we think it was, then the appointees are entitled to hold the

property, and to dispose of it, in the same manner, and for such purposes, as if the bequest had been made to them directly by the will. It was objected that the association was a fluctuating body, and that it does not appear that the associates making the appointment were the same who were so authorized by the will. But it is expressly alleged in the bill, that the appointment was made " in conformity with the direction, and in pursuance of the authority," contained in the will; and the heirs at law in their answer expressly admit the truth of all the facts set forth in the bill.

We are therefore of opinion that the appointment was duly made, and in conformity with directions in the will, and consequently that the appointees are entitled to the possession of the personal property, to hold in trust, and to manage and dispose of the same, for the purposes named in the will.

Several questions have been discussed by counsel as to the disposition of the real estate; but these questions cannot be decided in this suit. The executor has no interest in the real estate, nor is he authorized by the will to sell or dispose of it, either expressly or by implication. On the contrary, if the same was devised by the will, which the heirs at law deny, the legal or equitable title is vested in the Congregational Society in the town of Shirley, by the appointment of the Association of Pastors designated by the will. And the question of title can be only decided in a suit at law or in equity between them and the heirs at law.